IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 26, 2020

**STATE OF TENNESSEE v. ADAM LEE LOPER**

**Appeal from the Criminal Court for Putnam County**
**No. 18-CR-818      Wesley Thomas Bray, Judge**

_____

**No. M2019-02258-CCA-R3-CD**

_____

On September 30, 2019, the Defendant, Adam Lee Loper, pleaded guilty to theft of more than $2,500. The trial court imposed a three-year sentence of incarceration. The Defendant argues on appeal that the trial court erred in denying his request for probation. After thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Craig Fickling, District Public Defender, and Allison Rasbury West, Assistant District Public Defender, for the appellant, Adam Lee Loper.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Bryant Dunaway, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

We initially note that the Defendant has failed to include a transcript of the guilty plea submission hearing in the record on appeal. Such an omission may prevent plenary review of the Defendant's appeal. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (holding that "when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review"). In the instant case, the record contains adequate

information for a meaningful review.  See id.  ("[T]he key to meaningful appellate review under the abuse of discretion standard is whether the trial court recites a proper basis for the sentence.").  The record before us on appeal includes the sentencing hearing transcript, the presentence report, and judgment, which is sufficient for our review of the issue presented, and we will presume the guilty plea submission hearing transcript supports the trial court's decision.  See Caudle, 388 S.W.3d at 279 ("If . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court.").

Because the transcript from the guilty plea submission hearing is not included in the record on appeal, we derive the following summary of the facts from the presentence report.[1]  On June 6, 2018, Cookeville Police Department ("CPD") officers responded to a "shoplifter call" at a gas station.  While en route, CPD Officer Michael Arms was advised that the suspects were leaving the scene, going east on Interstate 40, and a be-on-the-lookout ("BOLO") call was sent to local authorities with the suspects' vehicle information.  After arriving at the crime scene, Officer Arms was informed that "a black male entered the store and distracted the clerk while a white male and female" filled two suitcases with cartons of cigarettes from the stock room.  The suspects then "fled the scene," putting the two suitcases in the trunk of a "white car."  The Tennessee Highway Patrol observed the suspects' vehicle on Interstate 40 and attempted to stop it.  A pursuit ensued, and the suspects were detained by the highway patrol.  The agency searched the vehicle and found two suitcases full of "approximately fifty-eight cartons" of cigarettes in the trunk of the vehicle, with a total value of $3,034.

The trial court conducted a sentencing hearing on December 2, 2019.  At the sentencing hearing, Dannon Stickler affirmed that she prepared the Defendant's presentence report.  Ms. Stickler testified that in creating the report, she discovered the Defendant had a Knox County theft conviction with an offense date two days later than that of the offense he was being sentenced for and an August 2018 Knox County theft conviction, meaning he was "on bond for the Putnam County" case when the Knox County offenses were committed.  Ms. Stickler noted that the Defendant pleaded guilty and received probation for the Knox County offenses in September 2018, but his probation was revoked in May 2019 "when he was found to be in violation[,] and those sentences were placed into effect[.]"  The Defendant also had "prior incidents in Knox County where he's had violations" of probation.

On cross-examination, Ms. Stickler agreed that of the Defendant's more than 20 total arrests, the "vast majority" were misdemeanors or dismissals.  She also affirmed that he had multiple felony theft convictions.  In total, the presentence report showed 14 prior

---

[1] We note that the Defendant stipulated to the presentence report at the sentencing hearing.

- 2 -

theft convictions, two drug paraphernalia convictions, one DUI conviction, one casual exchange conviction, and one attempted aggravated assault conviction. Ms. Stickler testified that the Defendant had a "moderate" score on the risks and needs assessment with regard to his "ability to complete probation[.]" The presentence report also reflected that the Defendant admitted to "weekly" cocaine use and did not have any employment listed after May 2011.

The Defendant's mother, Joan Loper, testified that she and her husband took care of three of the Defendant's four children, which was a financial "hardship[.]" She stated that he needed to be on probation so that he could "come home and take care of his own kids and [] pay child support." Ms. Loper also testified that she would not be able to have "knee replacement surgery while . . . caring for [the Defendant's] three children[.]" She stated that the Defendant had changed "like a hundred percent" and was "very religious now." Ms. Loper affirmed that the Defendant had "agreed to move into" her home if granted probation. The Defendant's father, Ron Loper, echoed his wife's testimony. He agreed that it was "very difficult" for them to take care of the Defendant's children. He also believed that the Defendant had "changed a lot[,]" and he affirmed that he and his wife would be supportive of the Defendant if he were granted probation.

In an allocution by the Defendant, he stated that he would "like to go back to school" and "start over[.]" He said that he worried about his parents having to take care of his children and was "very sorry for the path that [he'd] chosen." He also asserted that he was a "more humble person" than he was prior to incarceration and had "learned a lot of patience[.]"

Following the sentencing hearing, the trial court noted that it "sympathize[d]" with the Defendant's parents and the hardship of taking care of the Defendant's children. However, the court also noted that the Defendant's previous probation "didn't work" and concluded that "confinement [was] necessary to protect society from [the Defendant]." The trial court denied the Defendant an alternative sentence and ordered him to serve his three-year sentence incarcerated.

## ANALYSIS

The Defendant argues on appeal that the trial court abused its discretion by denying his request for alternative sentencing and ordering he serve his sentence in confinement. Specifically, he asserts that the court erred because his allocution showed remorse and a "plan for a more successful and productive future." The State responds that the trial court properly considered the Defendant's previous probation violations and criminal history in concluding that less restrictive measures than confinement had been unsuccessful in rehabilitating the Defendant and ordering incarceration. We agree with the State.

Under the 2016 amendments to the Sentencing Act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

We initially note that under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v.

Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

- 5 -

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1).

Under the "special needs" provision of the statute, an offender who does not otherwise meet the criteria above "and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for a community corrections sentence. Id. § 40-36-106(c). In making this determination, the trial court must first find that the defendant is eligible for probation and then must determine that (1) the defendant has a history of chronic alcohol abuse, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the defendant's criminal conduct; (3) the identifiable special needs are treatable, and (4) the treatment of the special need could be best served in the community rather than in a correctional institution. State v. Grigsby, 957 S.W.2d 541, 546-47 (Tenn. Crim. App. 1997) (citations omitted).

However, even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate in community corrections. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998). The defendant "bears the burden of affirmatively showing a 'special need' which could be better addressed in the community." Grigsby, 957 S.W.2d at 547 n.11. Moreover, the trial court is in the best position to ascertain a defendant's amenability to a community corrections program given its ability to observe the defendant's demeanor and characteristics first hand. Id. at 547.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

After listening to the Defendant's allocution, the trial court noted that it had considered the evidence presented at the sentencing hearing, the principles of sentencing and arguments as to sentencing alternatives, and the nature and characteristics of the criminal conduct to which the Defendant pleaded guilty. The court noted that because the three-year sentence length had previously been agreed upon, there were "really no mitigating or enhancement factors to consider[.]"

The trial court examined the Defendant's previous criminal history and noted that he had committed "theft, after theft, after theft[.]" The court also noted that the Defendant had "picked up [] charges" after pleading guilty to the charges in the instant appeal. The trial court acknowledged that it "realize[d] drugs are a life controlling issue" but was troubled that "rehab," treatment, and previous grants of probation "didn't work." The trial court also observed that the Defendant had been a father for 18 years but had constantly "chose[n] a life of crime" over making life changes and being a father to his children. Ultimately, the trial court found that "confinement was necessary" to protect society from the Defendant and to "avoid depreciating the seriousness of the offense" the Defendant committed.

We find no abuse of discretion in the trial court's denial of probation. As the trial court noted, the Defendant had a history of committing similar theft offenses and had been previously granted probation, which he violated. Although the Defendant gave an allocution indicating a desire to support his children and life changes he had made, the trial court noted that he had committed similar theft offenses before and after committing the instant theft offense. As evidenced by the record on appeal, the trial court thoroughly considered all of the evidence before it prior to denying probation and ordering incarceration, and the court stated its reasons for doing so. Despite the Defendant's arguments to the contrary, he is not entitled to probation, regardless of his remorse or plans for the future. As we have stated, the court's denial of probation and imposition of incarceration is entitled to a presumption of correctness absent an abuse of discretion, and we accordingly affirm the trial court's sentencing decision. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE